Thank you. May it please the Court, Anthony Colombo on behalf of Appellant and Petitioner Jose Rivas-Pozos. So the Court's aware, Mr. Scott, in regards to Mr. Ramirez-Escada, has been kind enough to give me his time and I will be handling the argument. You may do so. In the instant case, viewing the evidence in the light most favorable to the government, any rational juror would have a reasonable doubt as to whether Mr. Rivas-Pozos aided and abetted the bring-to offense. The evidence to sustain his conviction on the bring-to counts was simply insufficient and therefore the District Court erred in not granting Mr. Rivas-Pozos Rule 29 motions. Now there are really only two cases that the Court need to concern themselves with today in deciding this issue. And the first is U.S. v. Schemenauer, which would permit interlocutory appellate remedy where none other would exist in this case. The second is U.S. v. Lopez, which held that the crime of bringing aliens to the United States terminates once the initial transporter who brings the alien to the United States drops them off on this side of the border. Well, since you're citing cases, you better talk about Richardson, too. Well, Your Honor, what I'm prepared to do this morning is I would agree that the government has the better position in regards to Richardson. And I would advise the Court that even if there was no appellate jurisdiction in regards to the sufficiency evidence, that the remedy here would be under Schemenauer. Did both of these defendants seek a writ of mandamus or only Rivas-Pozos? It's my understanding that Mr. Ramirez eschated both the direct appeal and the writ of mandamus. Okay. I didn't see that in the papers, but that's why I asked the question. Thank you, Your Honor. So what I would say in regards to the direct appellate issue, however, is that I would urge the Court to look at the Kennedy exception and Wallach, which was cited in my briefs, that there was judicial misconduct here. And I would just leave the comments at that because I believe the Court, in getting to the issue, really the remedy is under the All Writs Act because it would appear that the government has the stronger case where direct appeal remedy would be foreclosed. So in looking at the instant case in light of Lopez, it would appear that as the defendants in Lopez first encountered the aliens when they were in the United States, that's exactly the situation here. But Lopez made it clear that a person could be guilty of aiding and abetting if they helped in the actual border crossing piece, even if they didn't personally contact the person until later, right? That's true. I believe that there was, in the direct content, talking about a financier. Well, that's an example. Yes, but I don't believe that that situation exists. Well, that's the question. If there was evidence from which a rational juror could have concluded that the defendants would have been guilty, even under Lopez, then you lose, right? Yes, but my argument here is that there was not sufficient evidence where a rational juror could conclude that the evidence was sufficient. In fact, any rational juror would have had a reasonable doubt as to whether Mr. Lopez. Well, that's not the test, whether a juror would have had a reasonable doubt. Well, I guess it's another way to say it. I believe that's the way. Could any rational juror have concluded that there was evidence to support a conviction beyond a reasonable doubt, is the way I would think of the test. But at least with respect to Mr. Rivas Pozos, and maybe your client's in a different position, but there was testimony that this address was the base of operations for a rather extensive ongoing alien smuggling operation, and Mr. Rivas Pozos at least admitted that he was part of that operation and that he had transported aliens about 15 times. So at least with respect to him, it seems to me, there's no question that a jury could have inferred that he aided the actual border crossing. Well, I think that's certainly the position that the district court took, and that's also the position of the government. Why is that wrong? Well, it's wrong for this reason, is that, one, is that the government concedes that Mr. Rivas Pozos had absolutely no involvement or connection with any of the aliens before they were dropped off at that house. What do you mean by involvement or connection? Well, he never made any arrangements with any of the material witnesses, never spoke to any of the material witnesses. In fact, none of the material witnesses ever saw him prior to arriving at that house, which was subsequent to being dropped off by the initial transporter. So, in fact, the government's theory is that Mr. Rivas Pozos had to have taken some action prior to that point. No, it's not that he had to have. It's whether a reasonable juror could have inferred that he did. And I don't believe that a reasonable juror could have inferred that he did, because even if you assume that there was this alien smuggling organization that Agent Leyva testified to, what Agent Leyva testified to was that each particular person in that organization or has a particular role, that Mr. Rivas Pozos was a caretaker of that home, which was in the United States after the aliens arrived in the United States. And then he had agreed to transport three or four aliens after they had already arrived in the United States. And Agent Leyva testified in his expert opinion that his roles in this organization are compartmentalized. And I would tell the court that they're compartmentalized for a reason. And the reason is so that one person does not know in the organization what another person is doing, because if one link in the chain breaks, then it does not affect the integrity of the entire chain or the organization. But what Agent Leyva testified to, what I think is more important in this case, and I think supports the argument on the defense side, is that in his factual investigation, Mr. Rivas Pozos' role was limited to that of a caretaker in the United States and a person who agreed to transport three or four individuals in the United States. So even assuming – Well, you keep using three or four, but didn't he admit to having dealt with or been involved in the illegal importation of 15 or so others? He didn't admit involvement in the illegal importation. What he did, and this is on excerpt of Record 37, his statement, is that they asked him how many times he had agreed to transport those individuals in the United States. And he said, I agreed to do that for Mr. Reyes-Bosque on approximately 15 occasions. So even assuming that Mr. Rivas Pozos was a serial transporter or serial harborer does not mean that he aided and abetted the offense here, because what – and I believe Your Honor is very familiar with this as to being on the en banc court in Lopez – is that the 1324, Congress established very distinct offenses. And I think in what Agent Rivas' testimony supports is that Mr. Rivas Pozos was committing a very distinct offense. He played a very distinct role. Whether it was in regards to this organization or not, he played a very distinct role, and he didn't do anything or have any involvement prior to the time that these individuals arrived into the United States. So that, I think, establishes that whether there was this organization or not, his previous involvement doesn't mean anything. And I would refer the Court to footnote 18 of Lopez, which I think may support the inference that in that footnote, the Court said that Lopez was involved with this individual, Jose. And there was not a lot of evidence about Jose, and it was difficult to infer what Jose was doing, but it's safe to say that Jose was a serial smuggler and that he was engaged in this before. So when Ms. Lopez was interacting with him, even if she was associating with someone who's involved in alien smuggling and has been involved in the past, that person, that mere association to commit the harboring or transporting offense does not mean that they aided and abetted the bring-to offense, which is a very distinct offense. What is the government's best evidence with regard to Mr. Ramirez's escada? Well, the District Court said this, and I believe the government has argued this as well, is that Mr. Ramirez's escada was listed on a ledger or a spiral notebook that Agent Leyva interpreted as being one of the people that was responsible for the aliens when they arrived into the United States. As I advised the Court in my papers, there's nothing linking Mr. Rivas-Pozos to that ledger or spiral notebook, and Agent Leyva testified to that. But I think that would be the government's best evidence in regards to Mr. Ramirez's escada. Let me ask you one final question. One of the government's arguments is that we should not be looking at the existing record and its sufficiency under Lopez because Lopez didn't exist. Nobody knew it was coming. It wasn't, some would say, an inevitable or perhaps even a likely outcome. And if there was clearly sufficient evidence on the then-existing law, which there was, and there's a change in law, why wouldn't the Court evaluate the permission to retry the defendants based on whether the government has proved the case that at the time it had to do so, did it in the right way, and did it with enough evidence? That's not a very clearly worded question, but I think you understand the question. I understand what Your Honor is asking, and I would respond. I believe I have three points. First is I think Lopez itself forecloses the government's argument because Lopez, at the time that the en banc Court reviewed Lopez, the law was in the same state as it was when Mr. Ramirez Esqueda and Mr. Rivas-Pozos went to trial, and Lopez didn't remand for a retrial, didn't tell the government they get a second shot at the apple because the government wasn't aware of what exactly they had to establish that the crime was not complete. So I think Lopez itself forecloses that. But in addition, the case that the government is citing in regards to Weems and Ratzlaff, the law didn't change, not like it did in Weems and Ratzlaff where there was an element added to it, an element of knowledge. The government was completely aware that they had to prove that Mr. Rivas-Pozos acted before the crime was complete to establish aiding and abetting. They were so aware that we litigated this pretrial, and they had the opportunity to present as much evidence as they could, and in fact they did. But I would say that the test under Weems is whether the government or the government must have had no reason to introduce such evidence under controlling precedent. And in this case, the government had all the reason in the world to present evidence to establish that the crime was not complete because they were aware that Lopez was pending, Lopez's appeal was pending. They were aware that what the law was and that it was in a state of flux. And in fact, the government argued in the alternative, and I would refer the court to Excerpt of Record 91, where they said, look, even if you assume that the crime was complete when the aliens took one step over the border, in the alternative, Mr. Rivas-Pozos was part of this machinery, this alien smuggling organization. So the fact that they didn't have a bite at the apple the first time they did, they marshaled all the evidence that they could at that time, and they were aware that they should have marshaled all the evidence that they could at that particular time. So that would be the response. I would reserve any remaining time that I have. You may do so, counsel. Thank you. We'll hear from the government. Good morning. May it please the Court. Mark Rahe for the United States. I'd like to take just a few minutes to discuss. It sounds almost like defense is basically conceding that there's no interlocutory jurisdiction for their direct appeal, but there was some argument about the Kennedy exception. I don't believe, Your Honor, there's any basis for finding of that exception applying here. And as you're aware from our briefs, first of all, that exception is a very limited one. It's supposed to be when a mistrial is granted based on the misconduct of either the prosecutor or the court. Counsel, let me quickly ask you what I asked opposing counsel as well. Did both of these defendants seek a writ of mandamus? It was unclear to me from the papers whether it was only Mr. Rivas-Pozos or whether both of them also raised the mandamus point. What's your position on that? It's our position that Ramirez-Escada did apply. I don't think as of this morning the PACER docket ever reflected an order, but that's why you'll see in our mandamus petition we drop a footnote. We anticipate it. We have no opposition to it. Okay. So I can blame it on the computer. That's convenient. I like doing that. Okay. Thank you. We've always kind of treated them in the same boat here. Thank you. With the Kennedy exception here, first of all, it's limited to where a mistrial was actually granted. And here, of course, no mistrial was granted. And the defense hangs its hat on a Second Circuit case Wallach, but to our understanding, Wallach has not been adopted by the Ninth Circuit. In fact, there's a case, Zuno Arce, that we cite that expressly said there was no mistrial, therefore that exception doesn't apply. And the other thing about Wallach, I was reviewing it again, when you look at it, the discussion about extending the Oregon v. Kennedy exception is really dipped two ways over, because first of all, the Second Circuit said, if there would ever be a case for extending the Oregon v. Kennedy exception, it wouldn't just be to a case where there's intentional misconduct by the prosecutor, but intentional misconduct where the prosecutor believes that an acquittal is impending. And then, in fact, at 979 F. 2nd at page 916, the Second Circuit goes on to say, applying this limited extension of Kennedy to Wallach's case, however, avails him nothing. So he didn't even get the benefit of the basically hypothesized extension there. But the bottom line, and I'll finish in a few seconds here, under any objective view, there's no way you can say what happened below is misconduct. What you have is the prosecutor in the court acting what they believed was consistent with binding Ninth Circuit precedent at the time, and that, of course, was the Anglin decision in the Ramirez-Martinez case. Every argument that the prosecutor had to try to limit the ability of the defense to claim that this offense was already complete was based out of that case law. And the same thing with Judge Benitez. In fact, he says on the record, I see, as Lopez turned out, I was wrong, but at the time, I followed what I believed was the correct view of the law. That is nowhere near the kind of cases, I believe, that are envisioned under this misconduct exception. So basically, it looks like this case comes down to, as the defense notes, the Schemanauer case, mandamus. Obviously, it goes without saying, mandamus is an extreme remedy. It's supposed to be granted in only extraordinary cases. Under the law, it's supposed to happen where there's a clear error of law. I know the Baumann case sets forth four or five factors, but this court in subsequent case law has said if there's no clear error of law, there's no mandamus, and as it should be because it's an extraordinary remedy. Now, one thing I'd like to start off with, and I think Judge Graber touched on this, I think the defense argument is basically putting the cart before the horse, or I don't know what kind of metaphor you want to use, but they're using the wrong paradigm. Well, ordinarily, if the government presents its case and there's insufficient evidence to convict, there's not a new trial, right? There's an acquittal. Correct. So if it were 100% clear from this record that these defendants had never heard of, seen, dealt with any alien smuggling in any way, shape, or form until after somebody was already in the United States, then we wouldn't have a retrial, presumably. So, you know, that would be, I guess, an extraordinary circumstance or a clear error of law or something. Well, possible, but to take you up on that, Your Honor, assuming that was the case, because here, obviously, we still put it forth in the mandamus petition. We think even if you view this evidence under the lens of Lopez, as the district court did, there was sufficient evidence, but on these particular facts, I still don't know that I would concede that a retrial would be barred because when you look at that trilogy of cases, Weems, Rescio, and Kim, they say that whenever there's an intervening change in law, you don't judge sufficiency by that new change in law. Doesn't it depend on how extensive the change in law is? Maybe, but I'm glad you brought that up, too, because the defense would have you limit that rule to only where there's a new element developed, and yet that's contrary to this Court's own precedent in Rescio. Of course, Weems and Kim dealt with the case of Rotsloff, and that was the structuring of financial transactions. Previously, the law was such that there was no mens rea component. Then along came the Rotsloff case and said, no, you have to prove that. That's now an element. But at no point did this Court ever say that that principle is limited to where there's a definition of a new element,  The United States v. Rescio. Well, in essence, this is more like a wrong instruction case than a change in law case. But again, if there's a wrong instruction case in general, would you not look at the sufficiency of the evidence under whatever the correct instruction is? I think you could, and if you find it's... But isn't that the way we would normally view it? If the instructions were wrong in a case, and it comes up on appeal, let's leave out all the mandamus complexity of it, and we determine that the instructions were not right, and here's how they should have been, then how do we decide then whether to remand for a new trial or simply reverse a conviction? Don't we look at what the correct law is? I think you do two things, Your Honor, but neither one of them bars a retrial. The first one is you look for a harmless error. That's Nieder v. United States. It would be analogous to the case where a certain element of a crime is not given to the jury. You could analogize that to a change in law that now imposes a new element and maybe ask them, well, was there overwhelming and uncontroverted evidence of that element, in which case this Court would be... But you're still looking at it under the correct paradigm, that is whether that element has been proved. You don't ignore it. You don't say, well, we know now that this is an element, but we don't care, because harmless error presumes that any jury would have found that element anyway. So you're looking at the new correct set of instructions, aren't you? Yeah, but not necessarily because I think you have to, but it's just prudential. That's what I was thinking to myself when I heard you asking the defense, because what I'm thinking is you're saying, well, even if under this new view of the law, the government's case is good enough, that we're done, because no matter what the standard is, it was met. Well, that's true. I guess this discussion matters only for those cases in which there was evidence in existence about aiding and abetting the transportation, and it wasn't presented at all. I mean, that's the narrow class of cases in which our conversation actually makes any difference. But, you know, the reason we want to fight this issue, though, is because who knows what the next change in law will be. And there's always, whenever you have these double jeopardy concerns, this undertone of equity and fairness, the government acted according to the laws it was at the time of trial. And then along comes this sea change in law, and it's not as minimal as defense would have you claim, because like I said, the district court said, I'm relying on Anglin, I'm relying on Ramirez-Martinez. Well, what did Lopez do on Bach? Expressly overrule those cases. So even if you want to say, is it a degree of the change in the law? That's a pretty significant change. But again, my point with the Resio case, in that case, that had to do with the drug conspiracy. It's actually very analogous to this case. Even though that was drugs, this is alien smuggling. The question there is, when does a conspiracy terminate? It was a temporal question. And apparently there used to be a rule, they called it the Cruz rule in the circuit, post-seizure and pre-seizure involvement in drugs. If there was a conspiracy to traffic in narcotics, and unbeknownst to the conspirators, the police seized the drugs such that it was impossible to achieve the aim of the conspiracy. The court used to look, okay, when did that happen? When did the defendant get involved? Along came the Supreme Court overruled that, and that's why in the Resio case, double jeopardy wasn't found in a retrial. And that's not creating a new element. That's saying, when does the conspiracy end? Similarly, we would say in this case, it's not a new element that's been devised, but the question is, when is the offense complete? But in any event, it's certainly, Resio stands for, if for nothing else, it stands for the proposition that the Weems rule is not limited to the creation of a new element. And if anything, the government would say these are really semantic differences, what you're talking about is a change in legal standard. There's also a Tenth Circuit case called Wacker that cites Weems from the circuit. We cite it in our brief. That also refused to find a double jeopardy violation, and that was a 924C use or carry of a firearm. And as this Court remembers, when the Supreme Court decided the Bailey case, it changed what was meant by use or carry. It didn't add a whole new element. Everybody knew all along that use or carry were the elements, but what it did was it said, we're going to change the standard on how that's defined. And then you had a case in Wacker, they relied on this Court's precedent in Weems, and they said, look, you can't judge it by the new law. You have to judge it by the old law. And under the old standards, the evidence here was surely sufficient. But in the interest of caution, this is why for mandamus purposes, we still do have that alternative argument, which I believe Your Honor already kind of went into. Okay. Looking at that argument, what, as to each defendant, would you summarize the best evidence that would permit a rational juror to have found under the new standard aiding and abetting? What you have that evidence in it, some of it applies to both, evidence of an ongoing ailing, smuggling organization. And let's keep in mind, to aid or abet, you have to have the specific intent that the underlying defense has committed, but you do something that encourages, that helps it out. Here we have the admission of Rivas Pozos. I believe he said he had worked for Emilio Reyes Bosque 15 times before. Ramirez-Escada said he had worked for him 10 times before. Rivas Pozos was either alternatively a caretaker or a driver. Ramirez-Escada was a checkpoint scout. Now, the defense, they would have you believe that, well, just because somebody has an individual role, somehow that can't mean they aid and abet. That's not true, Your Honor. If you have evidence, we would at least submit. Emilio Reyes Bosque, he was the ringleader of this operation. If he has people working for him, even Rivas Pozos described him as a friend. Ramirez-Escada was lying in a bedroom in Emilio Reyes Bosque's house at the time this happened. Evidence also showed that two days before the arrest, the arrest in this case was December 2nd of 2005, Emilio Reyes Bosque telephoned Mr. Ramirez-Escada, who apparently lived in Pasadena, and said, come on down for $250, I want you to start scouting checkpoints. That happens on November 30th. The names of the Matwits escape me right now, but it's in our mandamus petition. Actually, it's on page 22. Three of them, Pedro Montajano-Quintero, Martha Ramirez-Elizondo, and Rosa Gladys Juarez-Cartagena, the evidence all showed that they crossed on December 1st. If he's being contacted on November 30th and agreeing to come check the checkpoints, I think under a fair reading of aiding and abetting law, that's going to actively encourage or promote this offense. And again, and I'm sorry if I jump back and forth between them, but that's Ramirez-Escada, and he asked, what's the best evidence? He did it 10 times before. He was called on November 30th. He's staying in the house of the ringleader. And then as far as Rivas-Pozos, he also was already there by the time these aliens arrived. He admitted that he had done this 10 or 15 times before. Another thing I picked up, excerpt of record, page 40. When he was first contacted by police, Rivas-Pozos had 362 Wilson Avenue even on his identification card. So he has an ongoing, both of these defendants have an ongoing presence there. And some of the other evidence that the agent-labor testified to, you find maps in that load house. There are drivers, instructions for drivers, and there are these ledgers. There are accountability ledgers. And at least for Mr. Ramirez-Escada, you have multiple entries of a J. Luis. And the agent testified in his expert opinion, based on years of investigating alien smuggling organizations, that that shows preexisting involvement. And I know what the defense is going to do. They're going to get up here and say, well, that may show preexisting involvement, but not as to these individual people. But I don't think that's what aiding and abetting law requires. It doesn't require that the person who aids and abets commits every single one of the same elements as the principal. It just requires that you do some kind of assistance that aids, that encourages, that facilitates. And here, when you have somebody being called two days before several of these aliens are coming, and he agrees to come the 250 miles it takes to get from Pasadena to Brawley, the government would submit that at least a rational juror could find that that's substantial aid. And when you have somebody like Rivas Pozos, who admits to staying in that load house on occasion, whose ID has the same address, and who's previously also done this 10 to 15 times for the ringleader, again, we would argue that that shows aiding and abetting. And there's no second bite. There's no unfair second bite at the apple that the government wants here. I see my time is up in five seconds. All the government asks, Your Honor, is what this court said and means, give us a chance to try these defendants under this new legal standard, a standard that wasn't in existence at the time they were tried and convicted. Unless you have any further questions, the government would submit. No further questions, counsel. Mr. Colombo, you have some reserved time. What I would refer the court to is the Lopez decision, specifically page 1201. And I think this is what the government is overlooking. And to prove aiding and abetting, the government cannot merely show that Mr. Rivas Pozo is associated with Reyes Bosque, this ringleader, or with harboring and transporting aliens. That's what the Lopez decision makes. The government must show more than that, that he took some action prior to their entry into the United States. What about this November 30th, December 1st incident that we just heard about? In regards to Mr. Ramirez-Escada, I think what the government is saying is that Mr. Ramirez-Escada was contacted by Mr. Reyes Bosque, but that was to assist in the transportation north. That wasn't to assist in bringing them into the United States, because what the 1324 bring to offense punishes is the extraterritorial offense, not the actions that are taken within the United States. So if Mr. Ramirez-Escada took some action to further the transportation of these individuals north. But Lopez was a situation in which there was no evidence that the person really was part of a larger operation, and knew that she was. And here you have people who have known all along that they're cogs in a big wheel, and they're helping out, and part of that wheel circles people across the border. Why isn't that sufficient for aiding and abetting? I don't think there was sufficient evidence to establish that they knew that they were cogs in this big wheel, because what Agent Leyva testified to and the government presented, they played a specific role. This organization was compartmentalized, and there's no evidence to show that Mr. Rivas-Pozos or Mr. Ramirez-Escada knew what Mr. Reyes Bosque was doing, who he was doing it with, or when he was doing it. In fact, the evidence was that Mr. Rivas-Pozos didn't know when these people were going to arrive at the house, didn't know how many people were going to arrive, and had no idea who dropped them off. That's the uncontested evidence that was presented at trial. So the point is, is that the government presented that these organizations are compartmentalized, and they're compartmentalized for the reason that if one link in the chain breaks, the other link has no idea what is going on. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Gibson